Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN 164471)
cbc@caddellchapman.com
Amy E. Tabor (SBN 297660)
aet@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston TX 77007-1722
Tel.: (713) 751-0400
Fax: (713) 751-0906

*Attorneys for Plaintiff*

[additional counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

DONALD TRAN, *individually*
*and on behalf of persons similarly*
*situated,*

     *Plaintiff,*

   v.

FIRST ADVANTAGE BACKGROUND
SERVICES CORP.

     *Defendant.*

No. 2:21-cv-02857-JFW-KS

**PLAINTIFF'S AMENDED
CLASS ACTION COMPLAINT**

     Plaintiff Donald Tran files this Original Class Action Complaint against Defendant First Advantage Background Services Corp. ("First Advantage").

CASE NO. 2:21-cv-02857-JFW-KS

# I. INTRODUCTION

1.   Recognizing that non-conviction criminal history information, such as arrests or dismissed charges, which does not reflect any actual adjudicated criminal guilt can nevertheless unfairly limit job-seekers' employment prospects, Congress has chosen to regulate the provision of non-conviction criminal history information through the Fair Credit Reporting Act ("FCRA"). To protect citizens who have kept their records clean for at least seven years from the potential life-long consequences of having arrests or dismissed charges on their records, FCRA-regulated Consumer Reporting Agencies ("CRAs") may not furnish non-conviction adverse information if it antedates the report by more than seven years. 15 U.S.C. § 1681c(a). The California legislature has provided California citizens with even more stringent protections under California's Investigative Consumer Reporting Agencies Act ("ICRAA"), which prohibits Investigative Consumer Reporting Agencies ("ICRAs") from furnishing reports containing any criminal history information, including convictions, more than seven years old. CAL. CIV. CODE § 1786.18.

2.   In violation of these requirements, First Advantage, a regulated CRA/ICRA, has a regular policy and practice of communicating information about job-seekers' complete, life-long criminal history, including arrests, dismissed charges, and other items that do not reflect any actual criminal conviction, from the Federal Bureau of Investigation ("FBI") fingerprint database to potential employers with no time limitation.

3.   After agreeing to a fingerprint background check, Plaintiff was denied employment with Wells Fargo Bank, N.A. ("Wells Fargo") based on such an illegal First Advantage report. Wells Fargo informed Plaintiff that he was not eligible for the job he had applied for based on information in a First Advantage

background-check report showing that he had been arrested over 10 years before the date of the report, well outside FCRA/ICRAA's seven-year deadline.

4.   First Advantage takes the position that FCRA and ICRAA do not apply to background-check reports it furnishes from the FBI based on fingerprints, because it argues it is merely "channeling" this information from the FBI, making the information not a FCRA-governed "consumer report" or an ICRAA-governed "investigative consumer report." FCRA's plain language, however, makes clear that FCRA applies to *all* employment background-check reports by CRAs, regardless of the source of the information. 16 U.S.C. § 1681a(d)(1) (defining "consumer report" as "any written, oral, or other communication by a consumer reporting agency bearing on a consumer's credit worthiness, … character, general reputation … which is used or expected to be used … for … employment purposes"). Similarly, ICRAA defines an "investigative consumer report" to include "a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means." CAL. CIV. CODE § 1786.2(c).

5.   Plaintiff accordingly sues to protect his rights and those of Classes of similarly situated individuals who were the subjects of First Advantage reports from the FBI's fingerprint database. Plaintiff seeks actual damages, statutory damages, injunctive relief, punitive damages, attorneys' fees, costs and expenses of suit, and all other appropriate relief.

## II. PARTIES

6.   Plaintiff Donald Tran is an individual who during the relevant time period resided in Los Angeles County, California.

7.   Defendant First Advantage Background Services Corp. is and at all relevant times has been a foreign corporation registered to do business in the State of California, with its principal place of business at 1 Concourse Parkway, N.E., Suite 200, Atlanta, Georgia 30328. It may be served by service of process on its registered agent, CSC – Lawyers Incorporation Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833-3505.

### III. JURISDICITON AND VENUE

8.   The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff brings claims under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA"). The Court may exercise supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a).

9.   The Court has jurisdiction over First Advantage, and the venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Los Angeles County.

### IV. STATEMENT OF FACTS

10. On or about March 9, 2020. Mr. Tran applied for a job with Wells Fargo's Community Banking division in Pasadena California. The position Mr. Tran applied for was not expected to have an annual salary exceeding $75,000.

11. In connection with his employment application, Wells Fargo required Mr. Tran to submit to a First Advantage background check. Wells Fargo paid First Advantage a fee for the background-check report. First Advantage used means and facilities of interstate commerce for the purpose of preparing and

furnishing this consumer report, including but not limited to the internet, interstate telephone services, and interstate mail delivery services.

12. On or about March 9, 2020, Mr. Tran had his fingerprints taken in Irvine, California, to facilitate the background check.

13. On or about April 10, 2020, Wells Fargo informed Mr. Tran that it was reviewing his employment application and that it might take adverse action against him based on information in the First Advantage background-check report showing that he had been arrested on July 9, 2010, over 10 years before the date of the report.

14. Under FCRA, regulated CRAs may not report Obsolete Adverse Non-Conviction Information. 15 U.S.C. § 1681c(a)(2). Violations are subject to liability for actual damages and, in the case of willful violations, statutory damages of $100–$1,000 per violation, as well as punitive damages, costs, and attorneys' fees. 15 U.S.C. § 1681n.

15. Under ICRAA, regulated ICRAs may not report any Obsolete Criminal History Information, including "[r]ecords of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years." CAL. CIV. CODE § 1786.18. Violations are subject to liability for actual damages or statutory damages of $10,000 (whichever is greater), attorneys' fees, and costs, as well as, in the case of grossly negligent or willful violations, punitive damages. CAL. CIV. CODE § 1786.50.

16. On information and belief, First Advantage obtained the information regarding Mr. Tran's July 9, 2010 arrest from the FBI using Mr. Tran's fingerprint submissions. The FBI's fingerprint database contains criminal history information collected from various local and state law-enforcement authorities

around the country. This information includes records of arrest, dismissed charges, as well as convictions and other criminal history information going back decades. In violation of 15 U.S.C. § 1681c(a)(2) and CAL. CIV. CODE § 1786.18, First Advantage assembled this information into a report that was provided to Wells Fargo and used it to evaluate Mr. Tran's eligibility for employment.

17. Wells Fargo provided Mr. Tran with what it represented was a copy of the First Advantage report on which its decision was based. The report provided to Mr. Tran, however, did not contain any information about the July 9, 2010 arrest record mentioned in Wells Fargo's letter to Mr. Tran. The only information regarding criminal history in the background-check report provided to Mr. Tran showed that First Advantage had not found any criminal history information records for Mr. Tran in the Los Angeles Superior and Metropolitan Municipal Courts records.

18. Neither First Advantage nor Wells Fargo ever provided to Mr. Tran the First Advantage report containing the results of the FBI fingerprint database search including the Obsolete Criminal History Information regarding him. Without giving Mr. Tran a copy of the report or an opportunity to dispute it, First Advantage evaluated the Obsolete Criminal History Information and, as a result of its evaluation, scored Mr. Tran as "ineligible for hire."

19. On or about April 24, 2020, Wells Fargo informed Mr. Tran that he was not eligible for the position and that the decision was based on information in Mr. Tran's First Advantage report.

20. As a result of First Advantage's furnishing the report containing this information to Wells Fargo in violation of 15 U.S.C. § 1681c and CAL. CIV. CODE § 1786.18, Mr. Tran suffered injuries, including injuries to his statutorily

protected reputational rights, loss of employment, emotional distress, and damage to his reputation.

21. On or about May 1, 2020, Mr. Tran wrote to First Advantage requesting a disclosure of his full file.

22. On or about May 13, 2020, First Advantage responded to Mr. Tran's full file disclosure request. The information provided, however, was not complete because it did not include any information about the report furnished to Wells Fargo containing the results of the FBI fingerprint database search including the Obsolete Criminal History Information regarding Mr. Tran.

## V. CLASS ALLEGATIONS

### A. Congress has prohibited background-check CRAs like First Advantage from reporting Obsolete Adverse Non-Conviction Information.

23. The employment background screening industry in the United States is comprehensively regulated by the Fair Credit Reporting Act ("FCRA"). In enacting FCRA, Congress determined that consumers' reputational rights—which have long been protected by the common-law torts of libel, defamation, and slander—merit additional, stricter statutory protections in the employment context.

24. Under FCRA, a regulated Consumer Reporting Agency ("CRA") is "any person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties …." 15 U.S.C. § 1681a(f).

25. A consumer credit report is the "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit

standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for credit, housing, insurance, employment, or other FCRA-governed purposes. 15 U.S.C. §§ 1681a(d)(1), 1681b(a). Under these statutory definitions, employment background-check screening companies like First Advantage, which regularly assemble information bearing on consumers' character and reputation and furnish those reports to potential employers, are regulated CRAs subject to FCRA.

26. A person's reputation as reflected in his or her employment background check report is vitally important to securing and maintaining a job in the United States. When criminal history appears on background check reports, even a relatively minor incident can cause people to lose job opportunities. With as many as one in three Americans estimated to have a criminal record of some kind, the scale of the problem is enormous. *See* Jo Craven McGinty, *How Many Americans Have a Police Record? Probably More Than You Think*, WALL ST. J., Aug. 7, 2015.[1]

27. Making a judgment that arrests, dismissed charges, and other items of non-conviction criminal history information that do not reflect actual adjudicated guilt for a crime should not continue to haunt job seekers who have kept a clean record for over seven years, Congress prohibited CRAs from reporting such Obsolete Adverse Non-Conviction Information, unless the report is to be used in connection with employment at an annual salary of $75,000 or more. 15 U.S.C. § 1681c(a)(2).

---

[1] *Available at*: https://www.wsj.com/articles/how-many-americans-have-a-police-record-probably-more-than-you-think-1438939802 (last viewed October 21, 2020).

28. FCRA also mandates that CRAs provide consumers with notice of adverse public record information reported about them or maintain strict procedures to insure that it is complete and up to date. 15 U.S.C. § 1681k(a)(2). CRAs must also provide consumers with access to the information in their files and an opportunity to dispute any inaccuracies. *See* 15 U.S.C. § 1681g(a); 15 U.S.C. § 1681i(a).

29.  Background-check companies thus have detailed FCRA compliance polices including, for example: (1) procedures to obtain verification that the employer has obtained proper consent for the background check; (2) screening out any adverse information, other than criminal convictions, more than 7 years old (or bankruptcy information more than 10 years old) before furnishing reports to third parties; (3) notifying applicants when the background-check company reports adverse public record information about them and/or employing strict procedures to ensure the information is complete and up to date; (4) providing free annual file disclosures; and (5) providing a process to resolve disputes and correct any inaccurate information.[2] These procedures provide important protections against consumers' being denied employment based on inaccurate or outdated information.

## B. ICRAA provides even more stringent privacy protections to California job seekers.

30. ICRAA is California's equivalent of the FCRA. Similar to FCRA, ICRAA recognizes that "[t]here is a need to insure that investigative consumer

---

[2] *See* Ask CFPB, "I've been looking for a job. What do employers see when they do credit checks and background checks?" *available at* https://www.consumerfinance.gov/ask-cfpb/ive-been-looking-for-a-job-what-do-employers-see-when-they-do-credit-checks-and-background-checks-en-1823/

reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." CAL. CIV. CODE 1786(b).

31. Under ICRAA, an "investigative consumer report" is defined as a consumer report disclosing "information on a consumer's character, general reputation, personal characteristics, or mode of living … obtained through any means." CAL. CIV. CODE § 1786.2(c). Any entity that "for monetary fees or dues, engages in whole or in part in the practice of collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating concerning consumers for the purposes of furnishing investigative consumer reports to third parties" are regulated "Investigative Consumer Reporting Agencies" ("ICRAs"). *See* CAL. CIV. CODE § 1786.2(c)–(d).

32. Providing even more privacy protection than FCRA, California law prohibits the reporting of any Obsolete Criminal History Information, including records of criminal conviction, more than seven years old. ICRAA prohibits any ICRA from furnishing an investigative consumer report containing "[r]ecords of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years." CAL. CIV. CODE § 1786.18(a)(7).

**C. First Advantage cannot evade the Fair Credit Reporting Act and ICRAA.**

33. First Advantage is one of the largest background-check screening companies in the United States. As of 2018, it had an estimated 7.4% share of a $3.2 billion market. CFPB, *Market Snapshot: Background Screening Reports. Criminal Background Checks in Employment* 14–15 & n.17 (October 2019).  It operates in 26 locations with more than 4,300 employees,  and at the time First Advantage was acquired by a private equity group in November 2019, its

previous owner estimated that it had 35,000 worldwide clients. *See Press Release: Silver Lake to Acquire First Advantage* (November 25, 2019).[3]

34.   First Advantage, like other background-check companies, fulfills all the required elements of the statutory definition of a CRA. First Advantage has accordingly instituted FCRA-compliance procedures for background-check reports it furnishes. Acknowledging its responsibilities as a CRA, First Advantage advises potential customers on its website:

> Because the FCRA stipulates that First Advantage, a Consumer Reporting Agency, can only provide reports to people we believe intend to use the information for an FCRA permissible purpose such as employment and tenant screening purposes, we need to verify that you have a legitimate business need to request background reports.[4]

Because First Advantage's reports contain criminal history information, which bears on consumers' "character, general reputation, personal characteristics, or mode of living," First Advantage is also an ICRA subject to California's ICRAA. CAL. CIV. CODE § 1786.2(c).

35.   When First Advantage provides criminal history information from the FBI using the subject's fingerprints, however, First Advantage takes the position, contrary to the statutes' plain language, that it can ignore FCRA's and ICRAA's requirements. The FBI has approved certain contractors as "channelers" who are authorized to submit fingerprints to the FBI and receive FBI criminal history record information on behalf of authorized recipients. Arguably, channelers who do not otherwise qualify as CRAs, and who do not assemble or evaluate the FBI

---

[3]   *Available at* https://fadv.com/press-release/silver-lake-to-acquire-first-advantage/.

[4] First Advantage, FAQ's, *available at* https://fadv.com/faq/ (last accessed Nov. 6, 2020).

criminal history information for the purpose of furnishing consumer reports to third parties, do not become regulated CRAs simply by passing information from the FBI database through to authorized recipients. *See Mix v. JPMorgan Chase Bank, NA*, No. 15-cv-01102, 2016 WL 5850362, at *(D. Ariz. Oct. 6, 2016).

36.   Under any objectively reasonable interpretation of FCRA's plain language, however, a company like First Advantage that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information" is a CRA regardless of its role in assembling or evaluating any particular item of consumer information. 15 U.S.C. § 1681c; *see Cortez v. Trans Union, LLC*, 617 F.3d 688, 707 (3d Cir. 2010) (holding that in enacting FCRA Congress "unequivocally defined 'consumer report' to include 'any ... communication of any information by a consumer reporting agency'"). Moreover, First Advantage in this case did assemble and evaluate the Obsolete Adverse Non-Conviction Information regarding Mr. Tran, because it included the information in a report to First Advantage and scored Mr. Tran as "ineligible for hire" based on the information.

37.   Similarly under ICRAA, regardless of whether First Advantage is a "channeler," it is plainly engaged in "collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning consumers for the purposes of furnishing investigative consumer reports to third parties." CAL. CIV. CODE § 1786.2.

38.   After collecting fingerprints from job applicants like Mr. Tran, First Advantage's regular policy and practice is to submit the fingerprints to the FBI and receive the results of FBI background check searches run against the fingerprints. This information includes records of arrests, indictments, and misdemeanor complaints, as well as criminal convictions, without any time

limitation. First Advantage then takes the information received from the FBI and assembles it into electronic reports, which it furnishes to customers through a web-based interface.[5]

39.   First Advantage also has a regular policy and practice of evaluating the information it receives from the FBI, offering customers "[t]he capability to adjudicate results according to your guidelines and to reconcile the final dispositions of relevant arrest records."[6]

40.   First Advantage, as a regulated CRA, always has an obligation under 15 U.S.C. § 1681c not to include any Obsolete Non-Conviction Information in consumer reports, including when it furnishes reports to third parties containing information from the FBI fingerprint database. In violation of this requirement, First Advantage's regular policy and practice is not to screen non-conviction criminal history information over seven years old from the information it receives from the FBI fingerprint database but instead to include this Obsolete Non-Conviction Information in its reports to employers. As a result, First Advantage regularly reports Obsolete Adverse Non-Conviction Information to potential employers.

41.   This Obsolete Adverse Non-Conviction Information seriously harms the subjects' reputations, invades their statutory rights, and puts them at risk of being denied employment.

42.   As a regulated ICRA, First Advantage also has an obligation under ICRAA not to include any Obsolete Criminal History Information in

---

[5]   *See* First Advantage, Employment Solutions, *available at* https://www.fadv.com/Fadv-prod/media/Assets/Resources/Data%20Sheets/PDFs/FA031717_DS_Electronic FingerprintServices-w.pdf (last accessed Nov. 6, 2020).

[6] *Id.*

investigative consumer reports furnished to third parties regarding consumers in California. In violation of this requirement, it is First Advantage's regular policy and practice not to screen Obsolete Criminal History Information from reports provided regarding consumers in California,  but instead to include all information received from the FBI in its reports.

43.   This Obsolete Criminal History information seriously harms California consumers' reputations, invades their statutory rights, and puts them at risk of being denied employment.

44.   First Advantage's regular policy and practice is also to not provide job applicants like Mr. Tran and the Class and California Class members with reports showing any adverse information First Advantage reports about them from the FBI database. Nor does First Advantage provide any means for consumers to request a copy of this information from the consumer's First Advantage file or dispute mistakes. Indeed, many consumers may simply not receive the jobs they applied for without ever knowing the reason why.

45. Given First Advantage's substantial market share and the fact that Americans hold an average of 12.3 jobs from age 18 to age 52,[7] there is a substantial likelihood that Mr. Tran and the Class members will be similarly injured in the future.

46.   In order to redress these injuries, Mr. Tran now sues to enforce not only his own rights, but also those of thousands of others who have similar claims but may not even be aware that their rights are being violated.

---

[7] U.S. Department of Labor, Bureau of Labor Statistics, *Number of Jobs, Labor Market Experience, and Earnings Growth: Results from a National Longitudinal Survey* (August 22, 2019), *available at* http://https://www.bls.gov/news.release/pdf/nlsoy.pdf (last accessed January 22, 2021).

### D. The Classes

47. Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 for the following Classes:

**Class**:

All natural persons in the United States (including all territories and other political subdivisions of the United States) who (1) were the subject of First Advantage FBI fingerprint reports (2) provided to employers from five years preceding the filing of this Complaint to the present and (3) whose reports contained any record of a criminal arrest, charge, information, indictment, or other item of adverse criminal history information other than an actual conviction of a crime, which antedated the report by more than seven years.

**Disclosure Class:**

All natural persons in the United States (including all territories and other political subdivisions of the United States) who (1) requested a disclosure of their files from First Advantage from five years preceding the filing of this Complaint to the present and (2) who were the subject of First Advantage FBI fingerprint reports provided to employers during the two-year period preceding the date of the file request.

**California Class**:

All natural persons in California who (1) were the subject of First Advantage FBI fingerprint reports (2) provided to employers from four years preceding the filing of this Complaint to the present and (3) whose reports contained any record of a criminal arrest, charge, information, indictment, conviction, or other item of adverse criminal history information, which antedated the report by more than seven years.

**California Disclosure Class:**

> All natural persons in California who (1) requested a disclosure of their files from First Advantage from four years preceding the filing of this Complaint to the present and (2) who were the subject of First Advantage FBI fingerprint reports provided to employers during the three-year period preceding the date of the file request.

Excluded from the Class are any persons regarding whom First Advantage's customers certified that that they were being considered for positions with annual salaries of $75,000 or more. Excluded from the Class, Disclosure Class, California Class, and California Disclosure Class are any employees, officers, or directors of First Advantage, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

48. **Ascertainability**. The Class, Disclosure Class, California Class, and California Disclosure Class are ascertainable in that they comprise individuals who can be identified by reference to purely objective criteria, including information from First Advantage's business records. Notice may be mailed to members of the Class, Disclosure Class, California Class, and California Disclosure Class using the information in First Advantage's files, as updated through the National Change of Address Registry and other commercially available means.

49. **Numerosity**. **Fed. R. Civ. P. 23(a)(1)**. The Class, Disclosure Class, California Class, and California Disclosure Class are so numerous that joinder of all members is impracticable. Although the precise number of Class, Disclosure Class, California Class, and California Disclosure Class members is not currently known, First Advantage's large size shows that the Classes likely consist of at least thousands of persons and, therefore, it would be impracticable to bring all these persons before the Court as individual plaintiffs.

50. **Typicality**. **Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of each member of the Class, Disclosure Class, California Class, and California Disclosure Class he seeks to represent. These claims all arise from the same operative facts and are based on the same legal theories.

51. **Adequacy of Representation**. **Fed. R. Civ. P. 23(a)(4)**. Plaintiff will fairly and adequately protect the interests of the Class, Disclosure Class, California Class, and California Disclosure Class members. Plaintiff is committed to vigorously litigating this matter, and his interests are aligned with those of the Class, Disclosure Class, California Class, and California Disclosure Class. Plaintiff has retained counsel experienced in handling FCRA/ICRAA and consumer class actions.

52. **Commonality and Predominance**. **Fed. R. Civ. P. 23(a)(2) & (b)(3)**. Common issues of law and fact exist regarding Plaintiff's and the Class, Disclosure Class, California Class, and California Disclosure Class members' claims and predominate over any individual issues. These common issues include:

(a) whether any communication of information bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living by First Advantage for employment purposes is a "consumer report," as defined in 15 U.S.C. § 1681a;

(b) whether First Advantage assembled information on consumers from the FBI fingerprint database for the purpose of furnishing consumer reports to third parties;

(c) whether First Advantage evaluated information from the FBI fingerprint database for the purpose of furnishing consumer reports to third parties;

(d) whether First Advantage engaged in "collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning consumers for the purposes of furnishing investigative consumer reports to third parties," CAL. CIV. CODE § 1786.2;

(e) whether First Advantage reported adverse criminal history information regarding Class members that antedated the reports by more than seven years;

(f) whether First Advantage violated the duty to clearly and accurately disclose upon request all of the information in consumers' files;

(g) whether First Advantage acted willfully and/or negligently;

(h) whether injunctive relief is appropriate; and

(i) the appropriate measure of statutory and/or punitive damages.

53. **Superiority**. **Fed. R. Civ. P. 23(b)(3)**. A class action is a superior method for the fair and efficient adjudication of this controversy. The interests of Class, Disclosure Class, California Class, and California Disclosure Class members in individually controlling the prosecution of separate claims against First Advantage is small, as the maximum statutory damages recoverable by any one Class member is limited to $1,000 under the FCRA. Management of the Class's claims in a single proceeding will avoid inconsistent judgments and result in a more efficient use of judicial resources than resolving these same issues in many individual actions.

54. **Injunctive Relief Appropriate to the Class**. **Fed. R. Civ. P. 23(b)(2)**. This action should also be maintained as a class action because First Advantage has acted or refused to act on grounds that apply generally to the Class and

California Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class and California Class as a whole.

## VI. CLAIMS

### COUNT ONE – FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681c(a)

*(On behalf of the Class)*

55. Plaintiff incorporates the allegations set forth in the preceding paragraphs by reference here.

56. First Advantage is a "Consumer Reporting Agency" under the FCRA. First Advantage  regularly assembles information on consumers for the purpose of furnishing consumer reports to third parties. First Advantage furnished consumer reports to the prospective employers of Plaintiff and Class members for employment purposes.

57. First Advantage willfully violated 15 U.S.C. § 1681c(a) by including adverse information that antedated the reports by more than seven years, other than records of a criminal conviction, in the consumer reports of Plaintiff and other Class members. First Advantage acted in deliberate or reckless disregard of its obligations and/or the rights of Plaintiff and the Class members.

58. As a result of First Advantage's willful violation of the FCRA, Plaintiff and the Class members have suffered and continue to suffer injury and damages. Plaintiff and the Class members seek all relief to which they are entitled, including, but not limited to, statutory damages of not less than $100 and not more than $1,000, punitive damages, actual damages, appropriate equitable relief, attorneys' fees, and costs.

## COUNT TWO – FAIR CREDIT REPORTING ACT,
## 15 U.S.C. § 1681g

### *(On behalf of the Disclosure Class)*

59. Plaintiff incorporates the allegations set forth in the preceding paragraphs by reference here.

60. First Advantage is a "Consumer Reporting Agency" under the FCRA. First Advantage regularly assembles information on consumers for the purpose of furnishing consumer reports to third parties. First Advantage furnished consumer reports to the prospective employers of Plaintiff and the Disclosure Class members for employment purposes.

61. Nevertheless, First Advantage has a policy and procedure of not including the results of FBI fingerprint database searches in response to consumer requests for disclosure of the information in their files.

62. Plaintiff and members of the Disclosure Class requested copies of their complete First Advantage files.

63. In violation of 15 U.S.C. § 1681g, First Advantage failed to clearly and accurately disclose to Plaintiff and the Disclosure Class members upon their request all information in the consumers' files.

64. First Advantage's willful violation of 15 U.S.C. § 1681g subjects it to actual damages, statutory damages of between $100 and $1,000 per violation, punitive damages, reasonable attorneys' fees, and costs. 15 U.S.C. § 1681n(a).

## COUNT THREE – INVESTIGATIVE CONSUMER
## REPORTING AGENCIES ACT, CAL. CIV. CODE
## § 1786.18

### *(On behalf of the California Class)*

65. Plaintiff incorporates the allegations set forth in the preceding paragraphs by reference here.

66. The background check reports on Plaintiff and the California Class members that Defendant First Advantage provided to third parties are "investigative consumer reports" as defined under California Civil Code § 1786.2(c), because the information that First Advantage obtained from the FBI and reported in turn to third parties bears on "a consumer's character, general reputation, personal characteristics, or mode of living."

67. First Advantage is an "Investigative Consumer Reporting Agency" under the ICRAA because it collects, assembles, evaluates, compiles, reports, transmits, transfers, or communicates consumer information for the purpose of providing an investigative consumer report to third parties for a fee.

68. First Advantage willfully violated CAL. CIV. CODE § 1786.18 by including records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime, that antedated the reports by more than seven years in the investigative consumer reports of Plaintiff and other California Class members. First Advantage's violation was in conscious reckless disregard of Plaintiff's and the California Class members' rights under the stature.

69. Defendant First Advantage's violation entitles Plaintiff to the statutory damage of $10,000, along with reasonable attorneys' fees and costs. CAL. CIV. CODE § 1786.50.

70. Defendant First Advantage's willful violation also subjects it to punitive damages. CAL. CIV. CODE § 1786.50.

## COUNT FOUR – INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1786.10 & 1785.15
### *(On behalf of the California Disclosure Class)*

71. Plaintiff incorporates the allegations set forth in the preceding paragraphs by reference here.

CASE NO. 2:21-cv-02857-JFW-KS          – 21 –

PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

72. The background check report on Plaintiff that Defendant First Advantage provided to Wells Fargo containing the results of the FBI fingerprint database search is an "investigative consumer report" as defined under California Civil Code § 1786.2(c), because the information that First Advantage obtained from the FBI and reported to Wells Fargo bears on "a consumer's character, general reputation, personal characteristics, or mode of living."

73. First Advantage is an "Investigative Consumer Reporting Agency" under the ICRAA because it collects, assembles, evaluates, compiles, reports, transmits, transfers, or communicates consumer information for the purpose of providing an investigative consumer report to third parties for a fee.

74. Nevertheless, First Advantage has a policy and procedure of not including the results of FBI fingerprint database searches in response to consumer requests for inspection of their files.

75. Plaintiff and members of the California Disclosure Class requested inspection of their First Advantage files.

76. In violation of CAL. CIV. CODE §§ 1786.10 & 1786.15, First Advantage failed to disclose all files First Advantage maintained regarding Plaintiff and the California Disclosure Class members.

77. Defendant First Advantage's violation entitles Plaintiff to the statutory damage of $10,000, along with reasonable attorneys' fees and costs. CAL. CIV. CODE § 1786.50.

78. Defendant First Advantage's willful violation also subjects it to punitive damages. CAL. CIV. CODE § 1786.50.

## COUNT FIVE – UNFAIR COMPETITION LAW,
### CAL. BUS. & PROF. CODE § 17200, *et seq.*

### *(On behalf of the California Class and California Disclosure Class)*

79. Plaintiff incorporates the allegations set forth in the preceding paragraphs by reference here.

80. California Business and Professions Code § 17200 *et seq.* prohibits acts of unfair competition, which include any "unlawful … business act or practice."

81. As more fully described above and incorporated here by reference, Defendant First Advantage's acts and practices are unlawful as they violate ICRAA, CAL. CIV. CODE § 1786.18.

82. The acts and practices engaged in by Defendant First Advantage as alleged herein harmed Plaintiff and, on information and belief, harmed other California Class members. On information and belief, First Advantage's ICRAA violations are ongoing.

83. Defendant First Advantage's misconduct, as alleged herein, gave and continues to give First Advantage a competitive advantage because, in part, Defendant does not have to bear the cost of complying with the statutory requirements regulating the screening out of out-of-date criminal history information.

84. As a direct and proximate result of Defendant First Advantage's misconduct, First Advantage has prospered and benefited from the sales of its non-compliant background-check reports on Plaintiff and California Class members and should be enjoined from continuing such practices under CAL. BUS. & PROF. CODE § 17200 and related sections.

# VII. CONCLUSION AND PRAYER

WHEREFORE, Plaintiff, individually and on behalf the Class and California Class, respectfully requests that the Court enter judgment ordering relief as follows:

(a)    certifying the Class, Disclosure Class, California Class, and California Disclosure Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and/or (b)(2);

(b)    appointing Plaintiff to represent the Class, Disclosure Class, California Class, and California Disclosure Class;

(c)    appointing Plaintiff's counsel as Class Counsel;

(d)    declaring that First Advantage is financially responsible for notifying all Class, Disclosure Class, California Class, and California Disclosure Class members about this suit;

(e)    enjoining First Advantage from further violations of the Fair Credit Reporting Act and Investigative Consumer Reporting Agencies Act;

(f)    finding that First Advantage's Fair Credit Reporting Act and Investigative Consumer Reporting Agencies Act violations were willful;

(g)    awarding Plaintiff and the Class, Disclosure Class, California Class, and California Disclosure Class members actual damages, punitive damages, consequential damages, and statutory damages pursuant to 15 U.S.C. § 1681n and CAL. CIV. CODE § 1786.50;

(h)    awarding Plaintiff and the Class, Disclosure Class, California Class, and California Disclosure Class members reasonable attorneys' fees, expenses, and costs of suit, pursuant to 15 U.S.C. § 1681o(a)(2), CAL. CIV. CODE § 1786.50, the common fund theory, or any other applicable statute, theory, or contract;

(i)    granting leave to amend the Complaint to conform to the evidence produced at trial; and

(j)    awarding such other relief as this Court may deem just and proper.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: April 14, 2021                              Respectfully submitted,

*/s/ Michael A. Caddell*
Michael A. Caddell
mac@caddellchapman.com
Cynthia B. Chapman
cbc@caddellchapman.com
Amy E. Tabor
aet@caddellchapman.com
CADDELL & CHAPMAN
628 East 9th Street
Houston TX 77007-1722
Telephone: 713-751-0400
Facsimile: 713-751-0906

Devin H. Fok, Esq. (SBN 256599)
devin@devinfoklaw.com
DHF LAW, P.C.
16 N. Marengo Ave. Suite 403
Pasadena CA 91101
Ph: (888) 651-6411
Fax: (818) 484-2023

*Attorneys for Plaintiff*